# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

MAY 0 3 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Edward NUNEZ, Date of Birth: March 3, 1990

Case No. 19MJ9367

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C. Section 922(g) | Possession of a Firearm by Felon |

The application is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jon Dellinger, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/1/19

*Judge's signature*

City and state: El Centro California

Hon. Ruth Bermudez Montenegro, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Jon Dellinger, being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application authorizing the taking of DNA samples from Edward NUNEZ (NUNEZ), more particularly described in Attachment A, and incorporated herein.

2. The evidence to be searched for and seized is described in Attachment B, incorporated herein.

3. Based on the information below, there is probable cause to believe that, from buccal (oral) swabs that may be collected from the NUNEZ, there exists evidence of a crime, specifically, violations of Title 18, United States Code, Section 922(g) Felon in Possession of a Firearm (the SUBJECT OFFENSE).

## PERSONS TO BE SEARCHED

4. The persons to be searched are:

   a. Edward NUNEZ ("NUNEZ"), further described in Attachment A-1, who is currently in the custody of the Imperial County Sheriff's office.

## EXPERIENCE AND TRAINING

5. I am a peace officer in the State of California and have been since February 2017. I am currently employed as a Detective for the Brawley Police Department as defined by section 830.1 of the Penal Code. I am currently assigned as a Task Force Officer (TFO) with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE) Homeland Security Investigations (HSI) Assistant Special Agent in Charge (ASAC), Calexico, California Imperial Valley Border Enforcement Security Task Force (IV-BEST). This group is a multi-agency task force in Imperial, California that focuses on the organized trafficking of narcotics through and along the Southwest Border. My primary duties involve the investigation of narcotics-related

1

violations of Title 21 of the United States Code and the California Health and Safety Code.

6. As a TFO with IV-BEST, my primary duties include the investigation of narcotics-related violations of Title 21 of the United States Code and the California Health and Safety Code. I have participated in and conducted investigations of violations of various State and Federal criminal laws, including distribution of controlled substances, use of a communication facilities to commit narcotics offenses, importation of controlled substances, conspiracy to import, possess and distribute controlled substances, and money laundering, all in violation of Title 21 and Title 18, United States Code and various California Health and Safety Code and California Penal Code sections. These investigations resulted in arrests of individuals who have imported, smuggled, received and distributed controlled substances, including cocaine, marijuana, heroin, and methamphetamine, and the arrest of individuals who have laundered proceeds emanating from those illegal activities.

7. Also, these investigations resulted in seizures of illegal drugs and proceeds of the distribution of those illegal drugs. Through these investigations and training, I am familiar with the operations of illegal international Drug Trafficking Organizations (DTO) in various parts of the world, including Mexico.

8. I have conducted investigations concerning the identification of co-conspirators through the use of telephone records and bills, financial records, drug ledgers, photographs, and other documents. I have also

participated in the debriefings of many of those individuals arrested that later cooperated with the government.

9. Based on my experience, I am familiar with the methods utilized in narcotics trafficking operations and the trafficking patterns employed by narcotics organizations. I have also spoken with agents, as well as other law enforcement officers about their experiences, and the results of their investigations and interviews. I have become knowledgeable of the methods and modes of narcotics operations and the language and patterns of narcotics abuse and trafficking. I have become familiar with the methods of operation typically used by narcotics traffickers and distributors. I know that narcotics traffickers and distributors often use various residences, dwellings, storage units, and other structures to store and conceal their narcotics for the purpose of future distribution. Additionally, I also know narcotics traffickers and distributors store and conceal narcotics in locations separate from their immediate dwelling to avoid direct possession and thwart law enforcement efforts.

10. My experience as a TFO with IV-BEST, my participation in the investigation of narcotics organizations, my conversations with other agents of the DEA, HSI, Customs and Border Protection (CBP), and other state and local law enforcement officers familiar with narcotics trafficking and money laundering matters, and my training, form the basis of the opinions and conclusions set forth below, which I drew from the facts set forth herein. Because this affidavit is being prepared for the limited purpose of obtaining a search warrant, I have not set forth all of the facts known to me about this investigation, rather the facts I believe are necessary to establish probable cause for my request. Furthermore, I

3

know traffickers and distributors will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

11. I also know, in their efforts to thwart law enforcement, those involved in smuggling, selling, transporting, and distributing illegal narcotics will use code words, or cryptic messages when talking about the narcotics. Based on my training and experience, "Methamphetamine" (Meth), "Heroin", and "Marijuana" will likely be replaced with words like "Grass"; "Yellow"; "Tamales"; "Burritos"; "Cakes"; "Cookies"; "Presents"; "Gifts"; "Blankets"; "Boxes"; "Turkey"; "Ham"; etc.

12. I have completed over 100 hours of Gang training throughout the state of California. I have also completed additional online POST training hours on Gangs, which includes courses on 186.22 PC for Patrol. Throughout my career, I've spoken with several documented gang members, and or, dropouts of street gangs. I've spoken with several State, Local, and Federal law enforcement officers about gangs and their current trends. While working on patrol, I contacted gang members on a daily basis, and I've conducted over 25 Gang Field Identification interviews.

13. The facts set forth herein are those that I believe are relevant to the limited purposes of this affidavit, namely, to establish probable cause for the requested warrant. The affidavit does not, therefore, include each and every fact that I or other law enforcement personnel may have learned in connection with this ongoing investigation. In the affidavit, all dates and times are approximate.

14. I have knowledge of the facts set forth below based on my review of the reports, recorded statements, and evidence collected in this case. I have also spoken with

4

members of the Brawley Police Department team that originally searched the vehicle and reviewed their reports of the same.

## FACTS SUPPORTING PROBABLE CAUSE

15. On 10/28/2018, it was brought to attention by Brawley Police Department (BPD) Sergeant Orff, a Christopher VASQUEZ was possibly selling narcotics from 1485 and 1497 K Street, Brawley, CA. While assisting the Brawley Police Department with surveillance of 1497 K Street and 1485 K Street I observed heavy vehicle and foot traffic where individuals would walk or drive up to the location and stay for 1-2 minutes and leave. Brawley Police Officers conducted numerous stops resulting in the recovery of narcotics from individuals leaving the residence. With this information BPD Sergeant Orff obtained SW-2018-317 signed by the Honorable Imperial County Superior Court Judge Diane Altamirano. During the execution of the warrant a Marlin .22 cal rifle, and approximately 16.29 grams of methamphetamine were recovered inside of a bedroom in 1485 K Street. Additionally mail and personal effects belonging to VASQUEZ were located leading to VASQUEZ'S residency at the home and control over the items.

16. On 11/5/2018, at approximately 1300 hours, I, Task Force Officer Jon Dellinger assigned to Homeland Security Border Enforcement Taskforce (B.E.S.T.) was reviewing jail calls of Edward NUNEZ (DOB 3/3/1990). On 11/4/2018, at approximately 1230 hours, NUNEZ made a phone call to 442-270-1921 from the Imperial County Jail using the Telmate System. A Spillman data search of the number revealed a name record belonging to Christopher VASQUEZ (DOB 3/12/1982). During the approximate 4 minute and 42-second conversation, NUNEZ speaks with a male who he calls by the moniker "BOO BOO". "BOO BOO" is the

listed moniker for VASQUEZ listed in the Spillman Database. NUNEZ tells "BOO BOO" he was arrested by border patrol for crossing into Mexico without a pass from probation. NUNEZ asks "BOO BOO" what happened to his car. "BOO BOO," tells NUNEZ, Bennita has his car and he will drop the car off at NUNEZ' home. NUNEZ asks "BOO BOO" where Bennita is at and too put her on the phone. Bennita gets on the phone and NUNEZ tells her not to let anyone open the hood of his car. Bennita tells NUNEZ she will put money on his books and leave the car at his house.

17. At approximately 2022 hours, NUNEZ called 760-996-1957 and speaks with an unknown female and asks her to write down the number for "BOO BOO" and provides her the phone number 442-270-1921. NUNEZ tells the Unknown female to call "BOO BOO" and go pick up his (NUNEZ) car. NUNEZ told the unknown female the car was on "E" Street behind the DMV. This would be located on the 1100 block of "E" Street. On 10/12/2018, at approximately 2014 hours, I had conducted a traffic stop of NUNEZ while he was driving a red Honda accord (CA# 6JMK886). During the stop, NUNEZ advised me the vehicle belonged to him and was the last known vehicle NUNEZ possessed.

18. During the review of the calls, I identified "BOO BOO" as VASQUEZ and discovered through Spillman VASQUEZ had a listed address of 1111 "E" Street, Apt 2, Brawley, CA. I had knowledge VASQUEZ was a named suspect in an active Narcotics Sales case (BPD #181028014). VASQUEZ had a current pick-up and hold placed on him for the investigation and an active federal arrest warrant.

19. At approximately 1500 hours, while in an unmarked Brawley Police Vehicle I conducted physical surveillance of 1111 E Street and observed a red Honda Accord (CA# 6JMK886) parked in the east parking lot of the apartment complex. The Red Honda barred the same license plate as the vehicle NUNEZ was stopped in and claimed ownership on 10/12/2018. A Hispanic male adult wearing a white tank top and blue hat, appeared from the apartment complex from a blind corner and walked to the Honda and opened the trunk. I was approximately 30 yards from the Hispanic male and had an unobstructed view. The Hispanic male fit the description and Spillman Photo of VASQUEZ. I observed the Hispanic male close the trunk and take a seat in the driver's seat of the Honda. I observed a possible female sitting in the front passenger's seat of the vehicle. I observed the Hispanic male begin driving the vehicle out of the apartment complex by backing out onto "E" street. Once on "E" Street, the Hispanic male began heading westbound down the 1100 block of "E" Street. While keeping an approximate ½ city block distance behind the vehicle I followed the vehicle maintaining surveillance. I contacted Brawley Police (BPD) Agent A. Carlomagno who was working patrol in the city of Brawley and requested he intercept the vehicle and assists by initiating a stop if probable cause existed.

20. I maintained surveillance of the vehicle until BPD Agent Carlomagno arrived behind the Honda as it began heading west down the 900 block of B Street. BPD Agent Carlomagno conducted a traffic stop of the vehicle. (SEE SUP REPORT FOR FURTHER) The vehicle came to a stop on the 700 block of A Street, where both the driver and passengers were called out of the vehicle and detained.

21. I verbally identified the driver as Christopher VASQUEZ (DOB 3/12/1982) and verbally identified the passenger as Benita GONZALEZ (DOB 6/10/1989). I asked VASQUEZ if I could remove any items from his pockets before placing him inside the rear of a police vehicle. VASQUEZ told me that was fine. I located in VASQUEZ's front left pocket a black cell phone, a black and brown wallet, and three loose one-hundred dollar bills. I showed VASQUEZ the bills and placed the loose bills back into his wallet. I asked VASQUEZ how much money he had on him. VASQUEZ told me he had about 400 dollars. I secured VASQUEZ's belongings in the trunk area of a patrol vehicle and placed VASQUEZ in the rear seat, handcuffed to the rear and double locked for comfort. I asked VASQUEZ who the vehicle belonged to and if I could search it. VASQUEZ said the car belonged to his homie "Spooks" and provided me verbal consent to search. VASQUEZ was in possession of the vehicle at the time of the stop is currently on Federal Probation with a fourth amendment waiver.

22. Based on NUNEZ's jail calls the hood to the vehicle was opened and search of the engine compartment was conducted. I observed the battery for the vehicle was placed inside of a cloth bag inside the battery bay. On the left-hand side of the battery inside of the cloth bag, I observed a blue bag was sticking out. The blue bag had a zipper keeping it closed in a clamshell fashion. I removed the blue bag from against the battery and could immediately feel the weight of the bag and the hard object inside was consistent with a handgun. I opened the blue bag and discovered a stainless steel, Ruger P85 9mm handgun bearing serial number 302-52097. The handgun safety selector was set to fire and a magazine

inserted in the handle of the firearm. I located inside the blue bag an additional magazine with (5) 9mm bullets loaded inside the magazine.

23. I conducted a safety check of the weapon and removed the inserted magazine. The inserted magazine was loaded with (15) 9mm bullets. I cleared the chamber of the firearm and observed no chambered bullet. I provided Brawley Police Dispatch with a serial number of the firearm. Brawley Police Dispatch advised the firearm had no information in the database and appeared unregistered.

24. At approximately 1620 hours, Border Patrol Agent McCall and K9 Salino arrived and conducted a sniff of the vehicle. Agent McCall told me K9 Salino had demonstrated a pinpoint stare at the driver side door seam near the wheel well and firewall of the Honda. Agent McCall informed me that is a trained signal when K9 Salino detects the odor of narcotics.

25. Using a HEURESIS portable X-ray machine, I checked the area where the K9 alerted and observed an anomaly behind the driver side wheel well. I reached under the wheel well and could feel a hard plastic box. I could feel the box had no wired protruding from it and appeared to be a foreign object. I pulled at the box and it released allowing me to pull the box out. I observed the box was plastic and had a magnetic backing. I opened the box and discovered a clear zip lock like a bag inside with a white crystal substance consistent through my training and experience as being methamphetamine. The white crystalline substance later tested positive for methamphetamine and weighed approximately 37.19 grams. I also found a glass pipe with a bulbous end and white residue

throughout, along with a small ziplock bag containing a green leafy substance. I recognized through my training and experience the pipe as being consistent with a meth pipe and the green leafy substance and being consistent with cannabis.

26. BPD Agent Carlomagno showed me a clear plastic bottle he discovered in the gray backpack located in the backseat. The plastic bottle had small blue baggie twisted shut and white crystals on the bottom. I inspected the blue baggie and found it to be filled with a white crystal substance consistent with methamphetamine. BPD Agent Carlomagno also showed me a black electronic scale he discovered in the grey backpack. The scale had a white residue on base and was operational. The grey backpack also contained men's clothing and hygiene products.

27. Inside the vehicle resting on the steering column, I discovered a grey cell phone. The
cell phone was powered on and had a photo of VASQUEZ with another Hispanic male as the background.

28. Based on my training and experience the amount of narcotics located during the investigations is consistent with the sales and trafficking of narcotics.

29. Based upon my experience and training, consultation with other law enforcement officers experienced in firearms investigations, and all the facts and opinions set forth in this affidavit, I believe that a DNA sample collected from NUNEZ is relevant to the SUBJECT OFFENSE, specifically for comparison to any DNA recovered from the firearms seized on November 5, 2018.

30. With the approval of the Court in signing this warrant, HSI agents or other law enforcement officers will employ the least intrusive means possible by swabbing the interior of the mouth of the NUNEZ with a cotton swab.

## PRIOR ATTEMPTS TO OBTAIN INFORMATION

31. The United States has not attempted to obtain this information by other means.

## CONCLUSION

32. Based on my training and experience, and the foregoing facts, I believe there is probable cause to believe the NUNEZ committed the SUBJECT OFFENSE and, in light of the above information, there is probable cause to believe that obtaining DNA samples, from NUNEZ, described in ATTACHMENT A, is necessary to determine whether he possessed the firearms seized on November 5, 2018.

33. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

Jon Dellinger, Task Force Officer
HSI CALEXICO/ IVBEST

Sworn to and subscribed before me this __1ST__ day of ~~March~~ May, 2019.

*[signature]*

HONORABLE Ruth B. Montenegro
United States Magistrate Judge

12

## ATTACHMENT A
## PERSON TO BE SEARCHED

Edward NUNEZ (depicted below)

Date of Birth: March 3, 1990

California ID: A29389306

Sex: Male

Approximate Height: 5'09"

Approximate Weight: 230 lbs



## **ATTACHMENT B**

### ITEMS TO BE SEIZED

DNA samples from Edward NUNEZ (DOB 3/3/1990; California ID A29389306.), in the form of buccal cells on oral swabs. The oral swabs will be collected from the inside cheek portion of the mouth to sufficiently collect buccal cells pursuant to the standard practices and procedures employed by the Department of Homeland Security or the Brawley Police Department for DNA testing.

*AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)*

| Return |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : |||
| Inventory of the property taken and name of any person(s) seized: <br> [Please provide a description that would be sufficient to demonstrate that the items seized fall within the items authorized to be seized pursuant to the warrant (e.g., type of documents, as opposed to "miscellaneous documents") as well as the approximate volume of any documents seized (e.g., number of boxes). If reference is made to an attached description of property, specify the number of pages to the attachment and any case number appearing thereon.] |||

**Certification** (by officer present during the execution of the warrant)

*I declare under penalty of perjury that I am an officer who executed this warrant and that this inventory is correct and was returned along with the original warrant to the designated judge through a filing with the Clerk's Office.*

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*